## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00097-STV

KRYSTINA ANDREA ROMERO,

      Plaintiff,

v.

Franklin D. Azar & Associates, P.C.,

      Defendant.

---

## ORDER

---

Entered By Magistrate Judge Scott T. Varholak

      This civil action is before the Court on Defendant's Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("the Motion"). [#24] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##21, 22] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND[1]

      According to the Complaint, Plaintiff Krystina Andrea Romero was employed by Defendant Franklin D. Azar and Associates, P.C. as a Law Clerk from May 2, 2019 to October 15, 2019. [#1 at ¶ 4] Plaintiff signed an Employment Offer Letter and a

---

[1] The facts are drawn from the allegations in the Complaint [#1], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

Confidentiality, Non-Disclosure, and Non-Solicitation Agreement. [*Id.* at ¶ 14] Plaintiff's job responsibilities included assisting Defendant's employee attorneys with document drafting and client communication, including with Spanish-speaking clients. [*Id.* at ¶ 17] Plaintiff also occasionally handled Spanish intake calls. [*Id.* at ¶ 17] While Plaintiff was employed by Defendant there were six Spanish speaking attorneys at the firm, including Plaintiff. [*Id.* at ¶ 38] However, Plaintiff was the only Spanish speaking attorney: (1) admitted to practice law in Puerto Rico, (2) whose first language was Spanish, and (3) who was born and raised in a Hispanic country and culture. [*Id.* at ¶ 39]

After Plaintiff passed the Puerto Rico Bar Exam on May 16, 2019, she was identified on internal firm platforms as both a law clerk and an attorney, and she started receiving invitations to Defendant's attorney activities, including the Attorney Round Table Meetings and DTC Breakfast Club Meetings. [*Id.* at ¶¶ 19-22] Plaintiff received an "Attorney Contract" from Defendant between June 12, 2019 and July 11, 2019. [*Id.* at ¶ 24] On or after July 11, 2019, Plaintiff met with Defendant's employee Olga Malcom and requested the Attorney Contract be edited. [*Id.* at ¶ 25] Plaintiff expressed discomfort with being referred to as an "attorney" in an employment contract outside of Puerto Rico. [*Id.*] Malcom informed Plaintiff that the Attorney Contract could not be edited, but that Plaintiff could wait until she was formally licensed in Puerto Rico to sign it. [*Id.* at ¶ 26]

Plaintiff thereafter became a licensed attorney in Puerto Rico between August 17 and August 25, 2019, but did not sign the Attorney Contract. [*Id.* at ¶¶ 28, 184] On September 3, 2019, Plaintiff's job responsibilities were altered to include case management. [*Id.* at ¶¶ 27, 29] Plaintiff was assigned 30 cases, which exceeded Defendant's policy of assigning ten cases to law clerks and then building their case load.

[*Id.* at ¶ 29]  Plaintiff believed that the large work assignment was retaliation for her refusal to sign the Attorney Contract.  [*Id.* at ¶ 30]

On September 3, 2019, Plaintiff and other Spanish speaking attorneys at the firm were instructed to attend a mandatory promotional event at a Hispanic cultural celebration.  [*Id.* at ¶ 36]  Plaintiff was instructed to attend for at least four hours and was not provided additional compensation for attendance.  [*Id.*]  On September 6, 2019, Plaintiff received an email from her supervisor, Zach Balkin, specifically instructing Plaintiff and her mentor, Jennifer Torres, to attend the promotional event.  [*Id.* at ¶ 37]  Plaintiff was instructed to work six more hours than Torres.  [*Id.*]

Prior to September 2019, Plaintiff had only been asked to assist other attorneys with their work on three occasions.  [*Id.* at ¶ 31]  On September 3, 2019, Plaintiff's coworker, Daniel Loewy,[2] requested that Plaintiff draft a complaint for him.  [*Id.* at ¶ 32]  Plaintiff refused; Loewy then insisted she comply and questioned her reasons for refusal, which made Plaintiff uncomfortable.  [*Id.*]  Loewy informed Plaintiff that Plaintiff's supervisor had told Loewy to use Plaintiff's help with Spanish-speaking clients.  [*Id.* at ¶ 33]  Plaintiff's mentor, Torres, later told Plaintiff that the Defendant's policy was for junior attorneys, like Loewy, to handle their own cases and advised Plaintiff not to assist Loewy.  [*Id.* at ¶ 34]

On September 12, 2019, Loewy approached Plaintiff again and asked her to contact one of his Spanish speaking clients.  [*Id.* at ¶ 40]  Plaintiff refused and reported the situation to Torres.  [*Id.*]  On September 13, 2019, Loewy questioned Plaintiff about her complaint to Torres and told Plaintiff that he was "'above her' because she was an

---

[2] In the Complaint, Plaintiff spells Loewy's name as "Lowey."  [#24 at 3 n.2]  The Court uses the correct spelling in this Order.

attorney from Puerto Rico [ ] and he was an attorney from Colorado." [*Id.* at ¶ 41]  Plaintiff reported this incident to her second mentor, Peter McCaffrey.  [*Id.*]  On September 16, 2019, McCaffrey "asked Plaintiff whether he could assign her work or if she was going to feel insulted as happened with [Loewy]" and suggested that Plaintiff "could learn something from one of his clients and be nicer." [*Id.* at ¶ 42]  McCaffrey then began to assign Plaintiff more work than he had assigned her prior to her complaint about Loewy's conduct.  [*Id.*]

After reporting the incident with Loewy to McCaffrey:  (1) other firm employees began assigning Plaintiff additional work and interrupting Plaintiff's work to have her assist them with Spanish-language issues; (2) receptionists began assigning Plaintiff additional Spanish intake calls; (3) Balkin demoted Plaintiff to a case analyst and Plaintiff was instructed to attend case analyst meetings; and (4) other employees stopped responding to Plaintiff's requests, causing Plaintiff's work to fall behind.  [*Id.* at ¶¶ 43-44]  On one occasion an attorney interrupted Plaintiff during a training presentation and insisted she help him with a Spanish-language matter; Plaintiff felt humiliated by this interruption.  [*Id.* at ¶ 45]  Plaintiff asserts these actions were taken in retaliation for her complaint to McCaffrey about Loewy's conduct.  [*Id.*]

On October 7, 2019, Plaintiff submitted a formal complaint to Defendant regarding the above-listed conduct.  [*Id.* at ¶ 47]  Plaintiff attended a meeting with Olga Malcom and Zach Balkin regarding her complaint.  [*Id.* at ¶ 48]  During the meeting, Malcom informed Plaintiff that Malcom had requested that Plaintiff attend the case analyst meetings and Balkin clarified that Plaintiff's only job responsibilities were to manage her assigned cases and meet with her mentors.  [*Id.*]  Plaintiff then inquired about taking time off to study for

the Colorado Bar Exam; Malcom informed Plaintiff that she could take up to six weeks to study and that the firm would continue to pay her during that time at a rate of $4,000 per month.  [*Id.*]  At the end of the meeting, Malcom informed Plaintiff that Plaintiff had violated attorney-client privilege and the confidentiality agreement when she submitted her complaint to Defendant.  [*Id.* at ¶¶ 50-52]  Plaintiff asserts her disclosures were not protected by attorney-client privilege and did not violate the confidentiality agreement. [*Id.* at ¶¶ 50, 58]

On October 10, 2019, McCaffrey told Plaintiff that "it was common for Spanish-speaking employees to be overworked [in] Defendant's company."  [*Id.* at ¶ 54]  On October 12, 2019, Plaintiff attended a job interview at another law firm, but abandoned employment negotiations because that firm, unlike Defendant, would not pay for her to study for the bar exam.  [*Id.* at ¶ 55]  On October 15, 2019, Balkin and Malcom fired Plaintiff "for alleged violation of the confidentiality contract."  [*Id.* at ¶ 56]  Plaintiff asserts the alleged violation was a pretext and that Defendant actually fired her for complaining about her treatment and the incident with Loewy, as well as for her refusal to sign the Attorney Agreement.  [*Id.* at ¶¶ 56, 184]  On October 18, 2019, Defendant sent Plaintiff a Separation Agreement asserting that Plaintiff had worked as an attorney for Defendant since May 3, 2019; Plaintiff did not sign the Agreement.  [*Id.* at ¶ 68]

Plaintiff initiated this action on January 13, 2020.  [#1]  The Complaint brings nine causes of action:  (1) National Origin Discrimination (Disparate Treatment) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); (2) National Origin Discrimination (Hostile Work Environment) in violation of Title VII, 42 U.S.C. § 2000e-2(a); (3) Retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); (4) Sex Discrimination

in violation of Title VII, 42 U.S.C. § 2000e-2(a); (5) Sex-Based Pay Discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1); (6) Wrongful Discharge and Promissory Estoppel; (7) Wrongful Discharge and Breach of Contract; (8) Wrongful Discharge in violation of Public Policy; and (9) Intentional Infliction of Emotional Distress. [*See generally id.*]  Plaintiff alleges that she suffered severe emotional distress "such that her musculoskeletal system, sleeping patterns and personal relationships got compromised." [*Id.* at ¶¶ 69, 203]  Plaintiff seeks compensatory and punitive damages. [*Id.* at 34]

Defendant filed the instant Motion on May 5, 2020, seeking dismissal of Claims Two, Three, Six, Seven, Eight, and Nine.  [#24]  Plaintiff has responded to the Motion [#31] and Defendant has filed a reply [#34].  Plaintiff additionally filed a surreply in support of her response, which this Court accepted.  [##35, 36]

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Typically, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Tenth Circuit has declined to extend "the same courtesy" to pro se litigants who are also licensed attorneys. *Comm. on the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007); *see also Tatten v. City & Cty. of Denver*, 730 F. App'x 620, 624 (10th Cir. 2018) ("This circuit has repeatedly declined to extend the benefits of liberal construction to pro se pleadings filed by attorneys who have chosen to represent themselves.").

### III.   ANALYSIS

The Complaint asserts nine causes of action against Defendant.  [#1]  Defendant argues that Claims Two, Three, Six, Seven, Eight, and Nine should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  [#24]  The Court addresses each cause of action in turn.

### A.  Claim Two: Hostile Work Environment

The Complaint contends that Defendant violated Title VII of the Civil Rights Act by creating a hostile work environment for Plaintiff based on her national origin.  [#1 ¶¶ 83-102]  "The elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic . . . ; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Asebedo v. Kansas State University*, 559 F. App'x 668, 670 (10th Cir. 2014) (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262–63 (10th Cir. 2005).

A plaintiff may succeed in proving a hostile work environment claim either on the pervasiveness of the national origin-based harassment or based upon its severity. *MacKenzie v. City and Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005), *abrogated on other grounds* by *Lincoln v. BNSF Ry. Co.*, No. 17-3120, 2018 WL 3945875 (10th Cir. Aug. 17, 2018).  However, "Title VII does not establish 'a general civility code' for the workplace."  *Marks v. Sessions*, No. 16-cv-02106-WYD-MEH, 2017 WL 4278498, at *4 (D. Colo. Sept. 27, 2017) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  "Accordingly, 'the run-of-the-mill boorish, juvenile, or annoying behavior

that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim.'" *Id.* (quoting *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012)).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not amount to actionable conduct under Title VII.  *Faragher, v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation and citation omitted).

"The severity and pervasiveness of the conduct must be judged from both an objective and a subjective perspective."  *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  "In demonstrating these factors, the plaintiff 'must show more than a few isolated incidents' of enmity."  *Sidlo v. Millercoors, LLC*, 718 F. App'x 718, 728 (10th Cir. 2018) (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015)).

As support for the hostile work environment claim, the Complaint alleges that Plaintiff was "subjected to inappropriate and unwelcome verbal conduct" from Plaintiff's coworker, Daniel Loewy, due to her nationality.  [#1 at ¶ 85]  This verbal conduct occurred during a single encounter in which Loewy stated that he was "above" Plaintiff because he was a licensed attorney from Colorado and she was an attorney from Puerto Rico.  [*Id.* at ¶ 41; #31 at 5].  The Complaint also alleges that Loewy attempted to assign Plaintiff additional work due to her Spanish fluency and that Plaintiff and other Spanish-speaking attorneys were required to attend a Hispanic cultural celebration on a Sunday.  [#19 at ¶¶

32, 36-38, 40]  Plaintiff otherwise argues that after she reported Loewy's comment and actions, she was subjected to silent treatment, assigned additional work, and excluded from official events.  [*Id.* at ¶¶ 41-46; 92-94]

Defendant argues that the allegations in the Complaint are not severe or pervasive and that they instead "amount to a single arguably offensive remark by a coworker and a series of work assignments that Plaintiff subjectively believed were unfavorable."  [#24 at 4-5]  The Court agrees with Defendant's assessment.  First, the Complaint itself alleges that a number of the complained-of actions—in particular, the cold treatment by coworkers and assignment of additional work—were retaliatory.  [#1 at ¶¶ 42, 43]  If retaliation is the sole motivation for the conduct, "then this retaliatory conduct does not support [Plaintiff's] claim of [national origin] motivated harassment."  *Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 522 (10th Cir. 2017) (finding complained-of conduct was not racially motivated and therefore did not create Title VII hostile work environment claim); *see also Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010) (distinguishing between retaliation and discrimination claims under Title VII and concluding that retaliatory shunning by co-workers following sexual harassment complaint did not constitute sexual harassment); *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 758 (7th Cir. 1998) (concluding "cold shoulder" from co-workers in retaliation for plaintiff's participation in grievance process did not constitute sexual harassment).  The Complaint brings a separate retaliation claim under 42 U.S.C. § 2000e–3(a), in which the Court can properly consider actions taken by Defendant in retaliation for Plaintiff's complaints.  *See Burkhart*, 603 F. 3d at 476 ("Retaliation is a

cause of action under Title VII separate and distinct from [prohibited class] discrimination.").

The Complaint does, on occasion, state that the additional work was assigned to Plaintiff "on the basis of [Plaintiff's] nationality and Spanish fluency" [#1 at ¶ 45]. However, the Complaint makes no factual allegations that support the claim that the additional work was discriminatory, rather than retaliatory (as otherwise alleged) or merely the result of normal workflow fluctuations. Moreover, numerous Courts have found that language-based classifications are not automatically equivalent to race or national origin classifications. *See Olagues v. Russoniello*, 770 F.2d 791, 801 (9th Cir. 1985) (collecting cases). Given that Plaintiff's regular job duties involved use of her Spanish language skills—including to communicate with the clients of other attorneys and to take intake calls—and that the additional tasks were not exclusively in Spanish [*id.* at ¶¶ 17, 43], the Complaint fails to allege how Defendant's action of assigning Plaintiff Spanish-language work equates to national origin discrimination. The Court therefore finds that the Complaint does not plausibly plead that Plaintiff was assigned additional work because of her nationality and, in any event, the Complaint does not sufficiently allege that the additional work was pervasive, citing only four instances when Plaintiff was asked to do Spanish language work. [*Id.* at ¶¶ 32-33, 36-37, 40, 45]; *Brown*, 708 F. App'x at 522 (finding that isolated incidents do not create a hostile work environment claim).

Thus, only three potentially discriminatory incidents remain: (1) Loewy's comment to Plaintiff that he was "above" her, (2) Loewy's insistence on assigning Plaintiff his Spanish-language work, and (3) Defendant's instruction to Plaintiff and all other Spanish speaking attorneys to attend a cultural event without additional pay. "It is well-established

that a plaintiff cannot demonstrate pervasive harassment by pointing to 'a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments.'" *Brown*, 708 F. App'x at 522 (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)). Plaintiff has identified no more than a few isolated incidents which do not rise to the pervasiveness required to state a hostile work environment claim.

As to the severity of the three incidents, "the Supreme Court has 'made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment,' and that 'isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Brown*, 708 F. App'x at 522 (quoting *Faragher*, 524 U.S. at 788 (internal quotation marks omitted)). This Circuit has determined that isolated incidents, such as the ones listed in the Complaint, are sufficient to support a hostile work environment claim only when they are "threatening and severe" or "especially egregious or extreme." *Id.*; *see also Morris v. City of Colo. Springs*, 666 F.3d 654, 666-67 (10th Cir. 2012) (internal quotation marks omitted). Most incidents found to meet this standard involve some kind of physical assault. *See Morris*, 666 F.3d at 666-67 (summarizing cases). The Complaint makes no such allegations of threat or physical harm and pleads no other facts that "rise to the extreme level of conduct required for isolated incidents to give rise to a cognizable claim for a hostile work environment." *Brown*, 708 F. App'x at 522 (internal quotations omitted) (finding three isolated incidents insufficient to state a claim for hostile work environment).

Accordingly, the Motion is GRANTED as to Claim Two for hostile work environment in violation of Title VII and this claim is DISMISSED.

### B. Claim Three: Retaliation

The Complaint next alleges that Defendant violated Title VII by retaliating against Plaintiff. "The elements of a prima facie case for retaliation under Title VII are: (1) the plaintiff engaged in protected opposition to discrimination, (2) a reasonable employee would have found the alleged retaliatory action to be materially adverse, and (3) there is a causal connection between the protected activity and the alleged retaliatory action." *Asebedo*, 559 F. App'x at 672 (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). Because "Title VII does not prohibit all distasteful practices by employers," opposition to an employer's conduct is only protected by Title VII "if it is opposition to a 'practice made an unlawful employment practice by [Title VII].'" *Petersen v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (second quoting 42 U.S.C. § 2000e-3(a)). Thus,

> Title VII does not create a claim for every employee who complains about the potential for Title VII violations or about other employees' isolated racial slurs. It protects an employee who opposes any practice made an unlawful employment practice . . . or who reasonably believes he is opposing a practice made an unlawful practice by Title VII.

*Jordan v. Alternative Res., Corp.*, 467 F.3d 378, 380 (4th Cir. 2006).

First, the Complaint alleges that Defendant retaliated against Plaintiff after Plaintiff informally complained to her mentor about the September 13 encounter with Loewy.[3] [#1 at ¶ 106] However, this alleged "opposition" consisted of reporting a single comment made by Loewy and his attempt to assign Plaintiff work. As noted above, that incident

---

[3] The Complaint alleges that a number of retaliatory actions were taken against Plaintiff as a result of her informal complaint, including: (1) demotion of title and responsibilities to "Case Analyst," [#1 at ¶ 107]; (2) Defendant's employees assigning Plaintiff additional and more frequent work, [*id.* at ¶ 108]; (3) interference with work assignments, [*id.* at ¶¶ 45, 109]; and (4) freezing Plaintiff out from meetings and workplace activities, [*id.* at ¶ 109].

does not rise to the level of national origin harassment prohibited by Title VII.  *Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 112 (10th Cir. 2010) ("A complaint of a single racist remark by a colleague, without more, is not opposition protected by Title VII." (internal quotations omitted)); *see also Faragher*, 524 U.S. at 787-88.  Plaintiff's informal complaint was therefore not protected opposition because it did not report conduct prohibited by Title VII.[4]  *Petersen*, 301 F.3d at 1188.

Even if the informal opposition were protected activity, the Complaint makes no allegations regarding how the numerous (and unnamed) employees Plaintiff states retaliated against her would have learned about the opposition, and the Complaint does not allege that any of those employees were present when Plaintiff reported Loewy's conduct.  The Complaint therefore does not plead facts showing a causal connection between Plaintiff's opposition and her allegations of adverse employment actions by

---

[4] Even where no actionable discrimination takes place, a plaintiff may establish a Title VII retaliation claim if she had a "reasonable good-faith belief . . . that [s]he was engaging in protected opposition to discrimination."  *Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 700 (10th Cir. 2014).  "This 'reasonable good-faith belief' test has both subjective and objective components."  *Id.* at 701.  "A plaintiff must not only show that [s]he *subjectively* (that is, in good faith) believed that h[er] employer was engaged in unlawful employment practice, but also that h[er] belief was *objectively* reasonable in light of the facts and record presented."  *Id.* (quotations omitted).  Here, even assuming Plaintiff had a subjective good faith belief that the September 13 encounter constituted an unlawful employment practices, Plaintiff cannot show that her belief that the isolated incident could give rise to a Title VII violation was objectively reasonable.  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("No reasonable person could have believed that the single incident recounted above violated Title VII's standard."); *Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 113-114 (10th Cir. 2010) (finding that no reasonable person could have believed that a single racist remark by a co-worker violated Title VII); *cf. Rodriguez v. Wet Ink, LLC*, 08-cv-00857-MSK-CBS, 2014 WL 287339, at *3-4 (D. Colo. Jan. 27, 2014) (objectively reasonable for employee to believe that she had been exposed to a hostile environment where supervisor on numerous occasions made offensive, sex-based insults);  *Khan v. Hip Centralized Lab. Serv.*, CV-03-2411 (DGT), 2008 WL 4283348, at *3 (E.D.N.Y. Sept. 17, 2008) (repeated offensive comments directed at plaintiff was protected activity).

coworkers.  *See Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1149 (D. Colo. 2016) (dismissing retaliation claim where Plaintiff provided no factual allegations establishing how the person alleged to be retaliating against her knew about her complaints.).   Accordingly, the Motion is GRANTED as to the claim that Plaintiff's coworkers retaliated against Plaintiff for reporting her encounter with Loewy.

As to the second retaliatory action, the Complaint alleges that Defendant terminated Plaintiff's employment one week after Plaintiff submitted a formal, written opposition regarding Loewy's actions and the actions taken by Plaintiff's coworkers.  [#1 at ¶115]  The Tenth Circuit has determined that to create a retaliation claim, "[t]he employer must know not only that the employee has opposed an action of the employer . . . , but that the opposition was based on a belief that the employer's action constituted discrimination prohibited by Title VII (here, racial or national-origin discrimination)." *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009).

> [T]his result is compelled not only by the natural reading of the statutory language, but also by the purpose of the provision. The purpose of § 2000e–3(a) is to let employees feel free to express condemnation of discrimination that violates Title VII. That purpose is hardly served by imposing sanctions upon employers who take action against employees who never communicate their concern about unlawful discrimination.

*Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1189 (10th Cir. 2002).

Accordingly, the Complaint fails to plausibly allege a retaliation claim as to the formal opposition for two reasons.  First, Plaintiff's formal opposition reported coworker conduct which Plaintiff found offensive but which, as noted above, did not form the basis of a Title VII violation.  *Petersen*, 301 F.3d at 1188.  Second, the Complaint fails to plausibly allege that Defendant was aware that Plaintiff was attempting to make a Title VII discrimination complaint.  The written opposition submitted by Plaintiff makes no

reference to Title VII or to any form of discrimination.[5]  It does not mention Plaintiff's status as a Puerto Rican or Hispanic employee, nor does it argue that Plaintiff believed the incidents took place due to her protected status.[6]  And although the written opposition does state that on three occasions Plaintiff was asked to assist with Spanish speaking clients[7] [#24-1 at  2, 3], Spanish-language work was part of Plaintiff's regular job duties and the opposition does not indicate that Plaintiff believed the Spanish-language work to be discriminatory in nature.  [*Id.*]  Indeed, in the written opposition itself, Plaintiff stated that she "sincerely enjoy[ed] helping other employees with the Spanish speaking clients." [*Id.* at 4]

Moreover, in the written opposition Plaintiff states that she believes she is being retaliated against not for her opposition under Title VII but for "standing [her] ground and not letting another attorney belittle [her]." [#31-3 at  4]  Plaintiff's actual written opposition is therefore inconsistent with the Complaint's allegation that Plaintiff reported discriminatory conduct to Defendant.  Considering these facts together, the Court fails to

---

[5] Although "[t]he nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true," *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir.1994), an "indisputably authentic copy" of a document not attached to a complaint, but both referenced in the complaint and found to be central to the plaintiff's claim, may be considered by the Court without converting the motion to a motion for summary judgment. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997).  Although the formal, written opposition was not attached to the Complaint, it was submitted as an exhibit by both Plaintiff [#31 at 37-40] and Defendant [#24-1].  Because the content of the formal opposition is central to whether Plaintiff engaged in protected opposition under Title VII, the Court considers the content of that written opposition.

[6] Indeed, the written opposition does not even mention Plaintiff's protected status in reference to the incident with Loewy, stating only that,  "[[Loewy] said that he actually had THREE clarifications to make. The first one being that: **HE INDEED HAD AUTHORITY OVER ME** BECAUSE HE WAS AN ATTORNEY LICENSED IN THE STATE OF COLORADO." [#24-1 at 2 (emphasis in original)]

[7] Two of the three occasions involved the same attorney requesting her help with the same client.  [#24-1 at 3]

see how such an opposition put the Defendant on notice that Plaintiff was concerned about Title VII discrimination.  *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) (holding that emails sent to the defendant regarding retaliation were not protected opposition because the plaintiff did not mention age or age discrimination).

Finally, although the Complaint alleges that Plaintiff met with Defendant regarding her written opposition—and includes an account of the conversation—it does not allege that Plaintiff informed Defendant that she believed her coworker's actions were based on her protected status and instead only recounts Plaintiff's concerns about her work assignments.  [*See* #1 at ¶ 48]  This Circuit has determined that "the absence of such a reference [to discrimination] can preclude a retaliation claim because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII."  *Petersen*, 301 F.3d at 1188 (10th Cir. 2002).  The Complaint therefore fails to plausibly plead either that Defendant was aware of Plaintiff's concern about unlawful discrimination or that Defendant took retaliatory action based on Plaintiff's opposition.

Accordingly, the Complaint fails to state any Title VII retaliation claim, the Motion is GRANTED as to those claims, and they are DISMISSED.

## C. Claims Six and Seven: Promissory Estoppel and Breach of Employment Contract

Claims Six and Seven both relate to the terms of Plaintiff's employment with Defendant.  The Complaint alleges that Defendant made an oral promise to Plaintiff that Plaintiff would continue to be employed by Defendant through February 2020.  [#1 at ¶ 48]  In Claim Seven, the Complaint alleges that by firing Plaintiff, Defendant breached an

employment contract with Plaintiff to employ her through February 2020.  [*Id.* at ¶¶ 159-172]  In the alternative, in Claim Six, the Complaint alleges that Plaintiff relied to her detriment on an oral promise of employment through February 2020 by: (1) not quitting her job with Defendant, and (2) terminating employment negotiations with another law firm.  [*Id.* at ¶¶ 55, 139-158]

"Colorado adheres to the general rule that, in the absence of special consideration or an express stipulation as to the length of employment, employment for an indefinite term presumptively creates an at-will employment relationship that is terminable at any time by either party."  *Pickell v. Ariz. Components Co.*, 931 P.2d 1184, 1186 (Colo.1997).  The Colorado Supreme Court has further determined that

> the existence of such an at-will relationship may be rebutted, and the employee may demonstrate that the termination of the employment relationship is subject to certain restrictions. Such demonstration must consist of proof that the employer made statements to the employee . . . , and that those statements, the circumstances under which they were made, and the employee's reaction thereto, met the requirements . . . for an offer by the employer and the acceptance of that offer by the employee.

*Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 619 (Colo. App. 1997).

Additionally, under Colorado Law, a plaintiff must allege the following elements to plead a breach of contract claim: (1) existence of a contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages.  *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1058 (D. Colo. 2012) (citing *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).  With respect to the first element, the plaintiff "must show that the contract was properly formed," with "mutual assent to an exchange between competent parties—where an offer is made and accepted—regarding a subject matter which is certain, and for which there is legal consideration."  *Galvin v.*

*McCarthy*, No. 07-cv-00885-PAB-BNB, 2009 WL 890717, at *6 (D. Colo. Mar. 31, 2009) (citing *Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997)).

As an initial matter, the Complaint alleges that Plaintiff signed two documents regarding her employment, the Employment Offer Letter and the Confidentiality, Non-Disclosure, and Non-Solicitation Agreement.  [#1 at ¶ 14]  The Complaint further admits that the agreements contained clauses establishing that Plaintiff's employment was at-will.  [*Id.* at ¶ 143]  Nevertheless, the Complaint makes two arguments for how Plaintiff's agreement with Defendant was converted to a definite term employment contract.  First, the Complaint makes conclusory allegations that the Confidentiality Agreement contained liquidated damages clauses and established a term of employment; however, the Complaint fails to provide any facts supporting these assertions.  [*Id.* at ¶¶ 65, 141, 143]  In particular, the Complaint does not allege *what* term was supposedly created by the Confidentiality Agreement, nor what the supposed liquidated damages clauses entailed. *Twombly*, 550 U.S. at 555 (finding that a plaintiff may not rely on mere labels or conclusions to plausibly state a claim).

The Complaint instead asserts only that the Confidentiality Agreement's imposition of a two-year nondisclosure period created "legal consequences" upon termination of employment and that these consequences were inconsistent  with Plaintiff's at-will status. [#1 at ¶ 141]  But this assertion is legally deficient, as the Colorado Supreme Court has found that nondisclosure and noncompete agreements are not inconsistent with at-will employment.  *See Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011) (holding that "an employer's forbearance of the right to terminate an existing at-will employee constitutes adequate consideration to support a noncompetition agreement"

19

signed after the employee began working for the employer).   Accordingly, the Motion is GRANTED as to the Complaint's claim that the Confidentiality Agreement created a definite term employment contract which Defendant breached, and that claim is DISMISSED.

However, the Complaint also alleges that  Defendant's head of Human Resources, Olga Malcom, verbally offered Plaintiff a definite term of employment.  [#1 at ¶¶ 48, 163] The Complaint alleges that the parties agreed that Plaintiff would be paid $4,000 per month through February 2020, while Plaintiff studied for the bar exam.  [*Id.* at ¶ 48]  The Complaint thus plausibly alleges that Defendant agreed to employ Plaintiff for an express period of time—through February 2020—and that Defendant breached that agreement by firing Plaintiff before that term expired.  At this stage of proceedings, this allegation of terms is "sufficiently definite to enable the court to determine whether the contract has been performed."  *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir.1994) (quoting *Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960)).  Finally, although Defendant argues that Malcom's statement was merely an expression of Defendant's policy, rather than an offer of an employment term, [#24 at 15-16], such a fact-based determination is not appropriate at the pleadings stage.  Accordingly, the motion is DENIED as to Claim Seven.

This leaves Plaintiff's alternative claim for relief in Claim Six under the theory of promissory estoppel.  "To recover on a promissory estoppel theory, a party must establish that (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that promise would induce action or forebearance by the promise; (3) the promisee in fact reasonably relied on the promise to [her] detriment; and (4) the promise

must be enforced to prevent injustice." *Peace v. Parascript Management, Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014) (applying Colorado law). The alleged promise must "be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 620 (Colo. App. 1997). Here, the Complaint alleges that: (1) Defendant "promised Plaintiff that she would be employed during her time-off to study for the 2020 February Colorad[o] Bar Exam" at a rate of $4,000 per month [#1 at ¶¶ 145-46]; (2) Defendant historically made similar employment commitments, thus causing Plaintiff to rely on the promise [*id.* at ¶ 147]; and (3) Plaintiff relied on that promise by not pursuing another employment opportunity [*id.* at ¶¶ 148-49].

Defendant argues that this claim should be dismissed because "promissory estoppel is applicable only in the absence of an otherwise enforceable contract." [#24 at 13 (quoting *Scott Co. of Cal. v. MK–Ferguson Co.*, 832 P.2d 1000, 1003 (Colo.App. 1992), *overruled on other grounds* by *Lewis v. Lewis*, 189 P.3d 1134, 1140 (Colo. 2008))]. Defendant argues that the Employment Offer Letter and the Confidentiality Agreement are comprehensive written agreements on the matter and therefore preclude a claim of promissory estoppel. [*Id.*] But the Court declines to make a determination at this stage of proceedings as to whether those agreements, which the Court has not examined,[8] are enforceable.

Defendant also argues that it was unreasonable for Plaintiff to rely on such a promise because the Employment Offer Letter and Confidentiality Agreement contained

---

[8] The agreements were not attached to the Complaint. Moreover, although Defendant attached the agreements to the Motion, significant portions are redacted and therefore the Court declines to consider them at this time.

statements disclaiming oral modifications.   But in Colorado, "a subsequent oral agreement between the parties may modify a provision of an earlier written contract, even in the face of a provision in the original contract that modifications must be in writing." *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1193 (Colo. 2001); *see also James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 372 (Colo. App. 1994) ("[G]enerally, a written contract may be modified by a later oral agreement even in the face of a specific provision in the written agreement that all modifications must be in writing." (citation omitted)).   And the Complaint alleges that Defendant had made other non-written modifications to the contract, implying that such modifications were at least possible.  [#1 at 144]  Accordingly, whether it was reasonable for Plaintiff to rely on the promise is a fact determination not suited for the pleadings stage, and the Court finds that the Complaint plausibly pleads a claim for promissory estoppel.   The Motion is therefore DENIED as to Claim Six.

### D.  Claim Eight: Wrongful Discharge in Violation of Public Policy

Claim Eight alleges that Defendant asked Plaintiff to sign an Attorney Employment Contract that referred to Plaintiff as an attorney.  [#1 at ¶ 175]  The Complaint alleges that signing such an agreement would have violated Colorado Rule of Professional Conduct 5.5.  [*Id.* at ¶ 176]  It further alleges that Plaintiff was terminated for refusal to sign the Attorney Contract, in violation of public policy.  [*Id.* at ¶¶ 184-185]

"In general, employment contracts are at-will and either the employer or the employee may terminate the relationship at any time."  *Rocky Mountain Hosp. & Medical Service v. Mariani*, 916 P.2d 519, 523 (Colo. 1996) (en banc).  However, Colorado law recognizes an exception to this general rule "in situations where the employer terminated

the employment contract in violation of public policy." *Id.* The elements of a claim for wrongful discharge against public policy are: "(1) the employer directed the employee to perform an illegal act as part of the employee's duties; (2) the action directed by the employer would violate a statute or clearly expressed public policy; (3) the employee was terminated as a result of refusing to perform the illegal act; and (4) the employer was aware or should have been aware that the employee's refusal was based upon the employee's reasonable belief that the act was illegal." *Id.* at 527.

The Colorado Supreme Court has held that "professional ethical codes may in certain circumstances be a source of public policy." *Id.* at 525. For the purposes of this Order, the Court assumes without deciding that Colorado Rule of Professional Conduct 5.5 can be properly considered a source of public policy. The rule provides in relevant part:

> (a) A lawyer shall not:
>
> (1) practice law in this jurisdiction without a license to practice law issued by the Colorado Supreme Court unless specifically authorized by C.R.C.P. 204 or C.R.C.P. 205 or federal or tribal law;

Colo. RPC 5.5(a).

A Comment to the Rule states further: "In order to protect the public, persons not admitted to practice law in Colorado cannot hold themselves out as lawyers in Colorado or as authorized to practice law in Colorado." Colo. RPC 5.5, cmt. 1.

Plaintiff alleges that the Attorney Contract violated this provision by referring to Plaintiff as an "attorney." [#1 at ¶¶ 175-176] But Defendant permitted Plaintiff to defer signing the contract until after Plaintiff became licensed to practice law in Puerto Rico,

thus making Plaintiff, in fact, an attorney. [9]   [*Id.* at ¶ 26]  The employment of an attorney

not yet licensed in the employment state is well recognized:

> Law firms have always hired unlicensed student law clerks, paralegals and
> persons who have completed their legal education but are awaiting
> admission to the bar, before or after taking a bar examination or fulfilling
> residency requirements. Virtually every lawyer has served in such a
> situation and performed services to or through other attorneys for some
> period prior to his or her own admission to practice in the state where such
> services were rendered. No one has treated this activity as the unauthorized
> practice of law, because the licensed attorneys alone remain responsible to
> the clients, there are no court appearances as attorney, and no holding out
> of the unlicensed person as an Independent giver of legal advice.

*Dietrich Corp. v. King Resources Co.*, 596 F.2d 422, 426 (10th Cir. 1979).  Indeed, the

Colorado Bar Association Ethics Committee has provided a formal opinion regarding the

hiring of attorneys licensed to practice law in a jurisdiction other than Colorado ("domestic

lawyer"), recognizing such employment as valid so long as the domestic lawyer is not

engaged in activities that constitute the practice of law in Colorado and the hiring attorney

provides sufficient supervision of the domestic lawyer's work.  CO CBA Ethics Comm'n,

Formal Op. 121, 1, 11 (2009) ("Using Domestic or Foreign Lawyers and other

professionals is ethically acceptable, but should be done with caution. The hiring lawyer

must remember that he or she is ultimately responsible to the client, and, where

applicable, the court, for the legal product produced.")

Thus, hiring Plaintiff as an attorney licensed in a different jurisdiction does not, on

its own, represent a violation of the Colorado Rules of Professional Conduct.  The

---

[9] In the Response, Plaintiff alleges that the Attorney Contract was retroactive to May 3,
2019, a date prior to when Plaintiff was officially licensed and received an attorney
registration number. [#31 at 22]  The Court declines to engage this argument, as these
facts were not alleged in the Complaint.  *In re Qwest Commc'ns Int'l, Inc. Securities
Litigation*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (finding that a plaintiff may not
amend the complaint "by alleging new facts in their response to a motion to dismiss").

Complaint makes no allegation that Defendant attempted to engage Plaintiff in actions that would have constituted the unlawful practice of law, does not allege that Plaintiff was not supervised by licensed attorneys, and does not assert that the contract itself represented that Plaintiff was licensed in Colorado.  Moreover, the Complaint does not allege that Defendant instructed Plaintiff to represent to the public that she was licensed in Colorado.  Accordingly, the Complaint does not plausibly allege that Defendant instructed Plaintiff to practice law in Colorado in violation of Colorado Rule of Professional Conduct 5.5 and therefore does not state a cognizable claim for wrongful termination against public policy.  As such, the Motion is GRANTED as to Claim Eight and this claim is DISMISSED.

### E.  Claim Nine: Intentional Infliction of Emotional Distress

Finally, Claim Nine alleges that Defendant committed the tort of intentional infliction of emotional distress ("IIED").  In Colorado, "[t]he elements of [IIED] are (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress."  *Lee v. Colo. Times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009) (Dailey, J., concurring in part and dissenting in part); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

Defendant argues that the Complaint does not allege conduct sufficiently outrageous to support an IIED claim.  [#24 at 18-19]  In Colorado, outrageous conduct has been defined as conduct:

> [S]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the

recitation of the facts to an average member of the community would arouse his resentment against the actor, and him to exclaim, "Outrageous!"

*Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)). "Simply stated, 'liability . . . does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Pascouau v. Martin Marietta Corp.*, No. 98-1099, 1999 WL 495621 at *12 (10th Cir. July 14, 1999) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).

"Although the jury ultimately determines whether conduct is outrageous," *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009), "the court should determine in the first instance whether reasonable people may differ as to whether the conduct of the defendant has been sufficiently extreme and outrageous to result in liability," *Churchey*, 759 P.2d at 1350 (quotation omitted). Courts in this district have held that the tort of IIED "is not meant to be an incantation to augment damages in an employment discrimination or any other state or federal tort action." *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997) (internal citations omitted); *see also Finley v. Premier Earthworks & Infrastructure, Inc.*, No. 18-cv-00762-MEH, 2018 WL 4635958, at *3-4 (D. Colo. Sept. 27, 2018); *Goodwin v. Student Movers, Inc.*, No. 11-cv-02486-WYD-KLM, 2012 WL 1090427, at *3-4 (D. Colo. Apr. 2, 2012). Under this rationale, "[w]here the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)." *Visor*, 965 F. Supp. at 33.

Here, the Complaint asserts no factual allegations for the IIED claim that are different from the factual allegations supporting the Title VII claims. [#1 at ¶¶ 190-213]

The Complaint's assertion of the IIED claim differs from the other claims only in that it describes injuries sustained by Plaintiff as a result of Defendant's conduct[10] and makes conclusory statements reciting the elements of an IIED claim.[11]   [*Id.* at ¶¶ 202-203] "Therefore, Plaintiff's outrageous conduct claim is subsumed by [her Title VII] claims, and [the Complaint] fails to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)."[12]  *Finley*, 2018 WL 4635958, at *4; *see also Goodwin*, 2012 WL 1090427, at *3-4 (dismissing claims for failure to allege facts separate from Plaintiffs Title VII and state discrimination and retaliation claims); *Kashawny v. Xcel Energy Servs., Inc.*, No. 08-CV-02635-WYD-MJW, 2010 WL 1009897, at *2 (D. Colo. Mar. 17, 2010) (same); *Visor*, 965 F. Supp. at 33 (same).

Accordingly, the Motion is GRANTED as to Claim Nine and Plaintiff's IIED claim is DISMISSED.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [#24] is **GRANTED in part** and **DENIED in part**.  Claims Two, Three, Eight, and Nine are **DISMISSED.**

---

[10] The Complaint alleges that Defendant's discrimination caused Plaintiff to suffer stress and anxiety, and that it disrupted her musculoskeletal system, sleeping patterns, and personal relationships.  [#1 at ¶¶ 202-203]

[11] For example, the Complaint states in conclusory fashion, without additional facts, that "Defendant intentionally or recklessly created a hostile, discriminatory, exploitative, and humiliating work environment" [#1 at ¶ 206] and "Defendant's conduct was so extreme in degree as to go beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community."  [*Id.* at ¶ 207]

[12] Perhaps, in an appropriate case, a defendant's conduct could be so outrageous that it could support both a Title VII claim and an IIED claim.  This case—in which the allegations are insufficient to state either a hostile work environment or retaliation claim—is not that case.

DATED: December 22, 2020     BY THE COURT:

                 s/Scott T. Varholak
                 United States Magistrate Judge